Weygandt, C. J.
The nub of this controversy is the nature of the structure of the house involved in the transaction.
This is described as follows in one paragraph of the plaintiffs ’ petition:
“Wooden forms had been constructed with an opening about one foot in width and through such opening earth and clay had been poured into said forms and as a binding agent straw had been mixed therewith and after said material had been tamped the forms were removed and an outer coating, first of some tarlike preparation on the outside of the walls, and plaster on the inside, served to completely conceal the fact that said walls were constructed of earth, clay and straw as aforesaid; and that thereafter and before the events herein complained of, a thin veneer of Perma-Stone had been placed along the outside of the walls; and that all of said facts concerning said building and the composition of said walls were well known to each of the defendants at all of the times herein complained of.”
The plaintiffs allege further that they entered into the purchase contract relying on the misrepresentations which were made for the purpose of inducing them to believe the house was of tile construction.
The Court of Appeals found no evidence of conspiracy among the various defendants, and no evidence warranting a judgment against the two owners.
But as to the defendant selling broker, Taylor, that court held that the record does disclose evidence of fraud and deceit on his part. Said the court:
“While the law in this state, governing actions in deceit, is by no means clearly settled, yet, there may be found, in the Supreme Court decisions, a tendency to treat the necessary element of intent, or, in other language, scienter, as an intent to deceive, to mislead, to convey a false impression. Obviously, this must be a matter of belief or of absence of belief that the representation is true. The state of the speaker’s mind must be *345 inquired into in determining whether an action of deceit can be maintained. The required intent is indeed present in cases where the speaker believed his statement to be false, as also in cases where the representation is made without any belief whatsoever of its truth or falsity.
“Most courts in this country have gone further and held that, where representations are made by a person who is conscious that he has no sufficient basis of information to justify them, he may be culpably liable in an action in deceit. When one asserts a fact as of his own knowledge, or so positively as to imply that he has knowledge, when he knows that he has not sufficient information to justify it, he may be found to have the intent to deceive.”
It is hoped that the following citation of authority will have the effect of settling the law of this state by the approval of the view expressed by the Court of Appeals.
Eighty years ago in the fourth paragraph of the syllabus in the case of Parmlee, Admr., v. Adolph, 28 Ohio St., 10, this court held:
“4. To constitute representations fraudulent so as to be a ground for the rescission of a contract, they must be both false and fraudulent. If they are made with an honest belief, at the time, of their truth, they are not fraudulent; but if made recklessly, and without any knowledge or information on the subject calculated to induce such belief, and they are untrue, then they are fraudulent.”
And in the opinion in that case, on page 21, Ashburn, J., made the following comment:
“Where a party, from the nature of the transaction and his relation to the parties and the facts are such that he is chargeable with a knowledge of the truth of the representations he makes, if they are false, he can not escape liability by saying he believed them to be true. It was his duty to know whether they were true, and his belief will not excuse him from liability to the person injured thereby, unless the facts will reasonably justify a prudent man in such belief. ’ ’
Two years later in the second paragraph of the syllabus in the case of Aetna Insurance Co. v. Reed, 33 Ohio St., 283, this court held:
*346 “2. An action will lie for a false representation of a material fact, whether the party making it knew it to be false or not, if he had no reason to believe it to be true, when made, and it was done with the intention of inducing the person to whom made to act upon it, and the latter does so, sustaining a damage in consequence.”
And in the opinion in that case, on page 294, Ashburn, J., supplemented his earlier statement as follows:
“ ‘If the party made the representation not knowing whether it was true or false, he can not be considered as innocent ; since a positive assertion of a fact is, by plain implication, an assertion of knowledge concerning the fact. Hence, if a party have no knowledge, he has asserted for true what he' knew to be false.’ Bigelow on Fraud, 61 * *
In the subsequent case of Mulvey v. King, 39 Ohio St., 491, the pronouncement in the Reed case, supra, was approved.
In the first paragraph of the syllabus in the later case of Gleason v. Bell, 91 Ohio St., 268, 110 N. E., 513, this court held:
“1. Where a purchaser was induced to buy and pay for a city residence, by false representations made to him by the vendor as positive statements of fact clearly implying knowledge of the owner of the truth of the facts stated, and made under such circumstances that the vendor should have known of the falsity of the representations, and they were of such a nature as to affect the character, utility and value of said property, and the purchaser had a right to and did rely thereon, and suffered damage by reason thereof, he may recover. In such a case an averment that the vendor knew the representations to be false and made them with intent to deceive is not essential.” And in the opinion in that case, on page 275, Matthias, J., observed:
“Under the circumstances detailed in this petition it is not incumbent upon the plaintiff to aver and prove that the defendant knew the representations were false and made them with intent to deceive. The facts set up in this petition show that the party making the representations should have known whether they were true or false, and further show that they were made not as an expression of opinion but as positive statements of fact, with the intention that they should operate as an induce *347 ment to the sale of said premises. The recital of the transaction in the petition sufficiently shows that the representations were so made as to imply that the maker knew them to be true and intended that his statements should be so understood, believed and relied upon and operate as an inducement to the purchase of the premises.
“ ‘A positive statement implies knowledge, and if the party who makes it has no knowledge on the subject, he has told scienter what is untrue; he has affirmed his knowledge.’ 1 Bigelow on Fraud, 513.”
In the more recent case of Drew v. Christopher Construction Co., Inc., 140 Ohio St., 1, 41 N. E. (2d), 1018, the pronouncement in the Gleason case, supra, was approved and followed.
The foregoing expressions are consistent with the following summary in 37 Corpus Juris Secundum, 255, Section 20.
“While it has been broadly stated that to recover for fraudulent representations it must appear that the defendant knew of their falsity, such knowledge is generally held unnecessary. ’ ’
And in 23 American Jurisprudence, 921, Section 128, the rule is summarized as follows:
“If one asserts that a thing is true within his personal knowledge, or makes a statement as of his own knowledge, or makes such an absolute, unqualified, and positive statement as implies knowledge on his part, when in fact he has no knowledge as to whether his assertion is true or false and his statement proves to be false, he is as culpable as if he had wilfully asserted that to be true which he absolutely knew to be false and is equally guilty of fraud.”
In 19 Ohio Jurisprudence, 377, Section 75, the rule is stated :
“If a person makes a representation not knowing whether it is true or false, he cannot be considered as innocent, since a positive assertion of a fact is, by plain implication, an assertion of knowledge concerning the fact.”
In the instant case the record discloses the following cogent evidence offered by one of the plaintiffs, Mr. Pumphrey:
“Q. Now, what did Mr. Taylor say at that time in answer to your question as to how the house was constructed? A. He *348 told me it was tile constructed with Perma-Stone on the outside of it.
( t # * *
“Q. What did you say to Mr. Taylor at that time? A. Well, I asked him if the house was really constructed the way he told me it had been, and he said, ‘yes,’ it was.
É < # # *
“Q. Now, you said that you later went upstairs and you asked him again about the construction of the house, is that right? A. That’s right.
“Q. What did you ask him on this second occasion? A. I asked Mr. Taylor if he was sure that it was constructed of tile.
“Q. What was his exact answer at that time? A. And he told me it was.
( i * * *
“Q. And you are certain that there were two specific instances where he represented that the walls were tile on that first visit there, one in the basement and one up on the second floor? A. Yes.”
And Mrs. Pumphrey corroborated this as follows:
“Q. Were you in the basement, and did you hear any conversation between Mr. Taylor and Mr. Pumphrey on that date? A. I did, sir.
“Q. Will you relate the conversation that you heard? A. My husband asked him the construction of the walls of the house, and he said they were constructed of tile.
“The Court. He said what?
“A. They were constructed of tile, the walls of the house were constructed of tile.”
Hence, this court finds itself in agreement with the conclusion of the Court of Appeals that “the evidence is sufficient for the submission to a jury of the question of fraudulent misrepresentation amounting to deceit on the part of Taylor.” This court affirms the judgment of the Court of Appeals remanding the cause to the Court of Common Pleas for a retrial against the defendant selling broker, Taylor.

Judgment affirmed.

Matthias, Hart, Zimmerman, Stewart and Bell, JJ., concur.